NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION  at ASHLAND

CIVIL ACTION NO. 0:08-CV-114-HRW

EFRAIN OLIVARES                                                                                         PETITIONER

VS:                           **MEMORANDUM OPINION AND ORDER**

E. K. CAULEY                                                                                              RESPONDENT

\*\* \*\* \*\* \*\*

Efrain Olivares, an individual currently in the custody of the Federal Bureau of Prisons ("BOP") and incarcerated in the Federal Correctional Institution, in Ashland, Kentucky, has submitted a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, and has now paid the District Court filing fee.

This matter is currently before the Court for the screening of the Petition. 28 U.S.C. § 2243; *Harper v. Thoms*, 2002 WL 31388736, \*1 (6th Cir. 2002). As he is appearing *pro se*, Olivares' Petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his Petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court may dismiss the Petition at any time, or make any such disposition as law and justice require, if it determines that the Petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

## CLAIMS

Petitioner challenges a disciplinary decision against him and the resultant loss of credits for good conduct time ("GCT"), as being in violation of his due process rights.

## ALLEGATIONS

The following is a summary or construction of the allegations contained in the Petition and its attachments.  Record No. 1.

Petitioner is serving a 135-month sentence handed down on May 28, 2004, for a drug conviction in the United States District Court for the Southern District of New York.  He emphasizes that he is not challenging that sentence but an incident which occurred last year while he was incarcerated in the BOP's Lewisburg, Pennsylvania, Prison Camp and ended with his losing 14 days of GCT.

On November 1, 2007, Olivares was the subject of an incident report which he attaches to the instant Petition.  A case manager, Bill True, wrote that Petitioner, in hand and leg restraints, resisted being escorted to a holding cell in the prison administration building by pushing back against him; and he refused to cease this behavior despite being commanded to stop.  True further charges that upon arrival in the holding cell, Olivares "turned aggressively towards me while my left hand was on the restraints, causing me to pinch my left hand."  Finally, True states that he went to the prison's medical department for his injury.

The incident report charged Petitioner with a Assault of a Person (Minor), a Code 224 offense; Interfering with Staff in Performance of Duties, Code 298; Conduct Disruptive to the Security or Orderly Running of a BOP Facility, Code 299; and Refusing to Obey an Order of a Staff Member, Code 307.  The report also contains the words of a different BOP official, who investigated the charges and interviewed the Petitioner.  He has written that Olivares stated, "I don't know why

they brought me down to the admin building handcuffed I never resisted. I feel like we were being target from the day before." Exhibit [hereinafter "Ex."] A.

The matter was referred to a discipline hearing officer ("DHO"), who held a hearing on December 3, 2007, and issued a 5-page report on January 18, 2008 (Ex. B) and an amended report, on April 22, 2008, with three additional sentences as to the reasons for his decision on the last page (Ex. E). According to the Reports, Olivares presented two defenses. He first claimed that he was being made a scapegoat, based on an incident which had occurred the preceding day; and he also insisted that he could not have hurt Officer True because two other officers, named Angelini and Oldt, had escorted him from his housing unit to the administration building.

Petitioner testified at the hearing that a prisoner had left feces on another inmate's bed on the preceding day. Afterwards, the staff called a meeting and "told us if the person responsible for this act didn't own up to it, they were going to randomly select five people and lock them up. The next morning Angelini came and woke me up and . . . escorted me to the Administration Building." According to Petitioner, True had not escorted him; rather, True and Miller had escorted an inmate named Delgado-Hernandez, while he was escorted by Angelini and Oldt. The fellow-inmate was the sole witness requested by Petitioner. Delgado-Hernandez testified that True had, indeed, escorted him from his housing unit to the holding cell in the administration building; it was Angelini who was escorting Olivares; and therefore, it was impossible for Olivares to have injured True.

The DHO deferred a decision until he contacted Angelini about the inmates' testimony. Angelini wrote a second memorandum, dated December 10, 2007, wherein he explains in detail how both he and True came to be escorting Olivares. Angelini states that although he had started the process with Olivares in the housing unit, True, who had finished escorting his inmate, took over

3

Olivares' escort at the door of the administration building. When the disciplinary hearing reconvened on December 17th, the DHO read the new memorandum to the Petitioner, who denied a transfer from one officer to the other ever took place and maintained that Angelini had escorted him continually from the living unit to the holding cell in the administration building.

The DHO determined that the greater weight of the evidence supported the finding that inmate Olivares "committed the prohibited act of Code 298/224, Interfering With Staff in the Performance of Duties, most like Code 224, Assault." He sanctioned the Petitioner with the loss of 14 days GCT, a 30-day stay in segregation, a disciplinary transfer to a more secure facility, and the loss of commissary and visiting privileges for 90 days.

Petitioner appealed the conviction through the BOP's regulatory channels, to no avail, and he attaches copies of the documents exchanged in that process. Having exhausted the appeal proceedings, Olivares has now brought the instant action. In the last paragraph of his Petition, he summarizes the relief he seeks and the reasons therefor:

> The disciplinary action taken against Olivares should be set aside and 14 days of good conduct time credit to the Olivares' sentence should be restored because the disciplinary action was not imposed in an impartial and consistent manner, the disciplinary action was initiated for a capricious and retaliatory purpose, the DHO's method for assigning weight and credibility to statements and evidence was capricious and denied Olivares an impartial disciplinary hearing, and as a result the DHO's findings are not based on the greater weight of the evidence.

Record No. 1 at ¶ 27.

## DISCUSSION

The Court begins with what process was due the Petitioner. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court of the United States held that a prisoner is entitled to certain procedural due process protections if he or she is faced with either the loss of GCT or a penalty

which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In disciplinary proceedings which could end in such severe penalties, the Court has dictated that the following minimal due process protections must be provided for the prisoner: (1) the right to appear before an impartial decision-making body; (2) 24-hour written notice of the charge; (3) a qualified right to call witnesses; and (4) a written statement by the fact-finder(s) as to the evidence relied on and reasons for the disposition, all as the High Court set out earlier in *Wolff v. McDonnell,* 418 U.S. 539, 564-65 (1974).

Since the penalties imposed in this case included the loss of GCT, the instant Petitioner was, indeed, entitled to these procedures. However, he does not claim that he was not given any of these due process protections. He has presented no evidence of any irregularities before or during the hearing in front of the DHO, and the DHO report shows that he made no claims of procedural errors at either the first or second hearing.

With regard to the Olivares' claims of substantive due process or arbitrariness in the decision made against him, perhaps the Petitioner mis-perceives the role of the Court. A district court's role in reviewing a disciplinary conviction is extremely limited. Under *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985), a disciplinary conviction must be upheld as consistent with due process so long as there is "some evidence" to support the decision.

Case law is replete with the guiding principle that the Court has no authority under the guise of due process to review the resolution of factual disputes in a disciplinary decision; a district court merely ensures that the disciplinary decision is not arbitrary and does have evidentiary support. *Superintendent,* 472 U.S. at 457. "Some evidence," as its name suggests, is a lenient standard. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). Even meager proof will suffice. *Id.*

In the instant case, the evidence before the DHO in Olivares' favor was only his own testimony flatly denying that he committed the acts charged and the testimony of the other inmate that it was Angelini who was escorting Petitioner, while True escorted him. The remaining evidence available to the DHO was the incident report written by True; the medical department's "Injury Assessment and Followup form," showing that True had suffered an abrasion requiring minor first aid; a memorandum from an officer named Miller, who assisted True in placing Olivares in the holding cell; and the two memoranda from Officer Angelini.

With regard to what appeared to be a conflict as to who was escorting Olivares, the DHO wrote that he relied on the greater weight of the evidence, including Angelini's second memorandum. He set out Angelini's explanation, as follows:

> . . . Mr. Angelini initially escorted Olivares from the unit, as Mr. True was escorting another inmate. Olivares' wrists were too big for handcuffs, therefore Mr. Angelini escorted him from the housing unit without restraints. As he exited Unit 1, Mr. Angelina observed Mr. True exit the Administration Building at the Lewisburg Camp. Mr. Angelini yelled for Mr. True to get a set of shackles. Mr. Angelini proceeded to the side door of the Administration Building where he ceased escort of Olivares. Mr. True came out and placed restraints on Olivares, and assumed responsibility for escorting the inmate to the holding cell.

*Id*. All of this amounts to more than "some evidence" to support Olivares' guilt on the charges.

In contrast, Petitioner generally complains of what he considers internally contradictory statements and of the DHO's weighing the several staff members' versions of events as more probative than that of the two inmates, but he offers no basis for a retaliatory motive or arbitrariness on the part of the DHO or anyone else involved, either in the process or the result. To the extent that the Petitioner is asserting that the evidence supplied by those officers lacks credibility, independent assessment of witnesses' credibility is not required. *Superintendent*, 472 U.S. at 455. Moreover, the

credibility determinations of the hearing officers cannot be disturbed on appeal. *Wagner v. Seely, et al.*, 915 F.2d 1575, 1576 (7th Cir. 1990) (unpublished), *cert. denied* 501 U.S. 1219 (1991).

The Court concludes that Olivares has presented no violation of federal law tainting the instant disciplinary conviction at issue herein and that the Petitioner's conviction and loss of GCT must stand. Accordingly, and the Court being otherwise advised,

**IT IS ORDERED** as follows:

(1) Efrain Olivares' Petition for Writ of Habeas Corpus is **DENIED**; and

(2) this action will be **DISMISSED** from the docket of the Court; and Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

This November 18, 2008.

Signed By:
Henry R Wilhoit Jr.
United States District Judge